The Honorable Richard A. Jones

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CARLOS DEMARK DENNIS,<br><br>Defendant. | NO.  2:18-cr-00131-RAJ<br><br>ORDER ON DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE |

This matter comes before the Court on Defendant Carlos Demark Dennis' motion for compassionate release.  Dkt. 1370.  Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby **DENIES** the motion for the reasons explained herein.

**I. BACKGROUND**

Mr. Dennis is a 43-year-old inmate currently detained at Federal Correctional Institution Sheridan, with a projected release date of May 23, 2024.  On July 31, 2019, he pled guilty to Conspiracy to Distribute Controlled Substances in violation of 21 U.S.C. §§ 841 (a)(1), 841(b)(1)(C), and 846; Possession of a Firearm in Furtherance of a Drug Trafficking Crime in violation of 18 U.S.C. § 924(c)(1)(A)(i) and 2; and Fraud and Related Activity in Connection with Identification Documents in violation of 18 U.S.C. §§ 1028(a)(7), 1028(b)(1)(D) and 2.  Dkt. 1016.  On January 24, 2020, Mr. Dennis was

sentenced by this Court to 84 months of imprisonment, to be followed by three years of supervised release. Dkt. 1263. He now moves for compassionate release arguing that he presents extraordinary and compelling reasons for immediate release.

## II. DISCUSSION

### A.     Legal Standard for Compassionate Release

18 U.S.C. § 3582(c)(1)(A) allows a court to reduce a term of imprisonment if "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." The Sentencing Commission's policy statement, in turn, says that a court may reduce a term of imprisonment if "the defendant is not a danger to the safety of any other person or to the community" and "extraordinary and compelling reasons warrant such a reduction." United States Sentencing Guidelines ("USSG") § 1B1.13. The policy statement clarifies that such reasons exist when (1) "the defendant is suffering from a terminal illness" or (2) "the defendant is suffering from a serious physical or mental condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." USSG § 1B1.13 cmt. n.1. The policy statement also directs a court to consider the factors set forth in 18 U.S.C. § 3553(a) in deciding whether compassionate release is appropriate and what form compassionate release should take. USSC § 1B1.13 cmt. n.4.

Mr. Dennis' motion seeks a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018. As amended, § 3582(c)(1)(A) permits an inmate, who satisfies certain statutorily mandated conditions, to file a motion with the sentencing court for "compassionate release." As relevant to Mr. Dennis' motion, the statute now provides:

> (c) Modification of an imposed term of imprisonment. --The court may not modify a term of imprisonment once it has been imposed except that--
>
> (1) in any case--

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
>
> (i) extraordinary and compelling reasons warrant such a reduction;
>
> . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

The relevant statute gives this Court authority to reduce a previously imposed sentence if three requirements are satisfied: (1) the inmate has either exhausted administrative review of the Bureau of Prison's failure to bring such a motion, or waited until 30 days after the request was made to the warden where the inmate is housed if that is earlier; (2) the inmate has presented extraordinary and compelling reasons for the requested reduction; and (3) the reduction is consistent with the Sentencing Commission's policy statement.

### B.     Exhaustion of Administrative Remedies

Prior to considering the merits of Mr. Dennis' compassionate release motion, the Court must determine whether he has met the statutory exhaustion requirement for compassionate release.  *See* 18 U.S.C. § 3582(c)(1)(A).

The parties agree Mr. Dennis has satisfied this requirement by submitting a request to the warden of FCI Sheridan on April 27, 2020.  Dkt. 1370, Ex. P.  He has received no response.  As the statutorily required 30-day period has expired, Mr. Dennis' motion is properly before the Court.

## C.     Extraordinary and Compelling Circumstances.

The Court must next determine if extraordinary and compelling circumstances warrant a reduction of Mr. Dennis' term of imprisonment.  *See* 18 U.S.C. § 3582(c)(1)(A)(i); USSG § 1B1.13.

The policy statement referenced in § 3582(c)(1) was promulgated by the Sentencing Commission pursuant to the authority Congress vested in it in 28 U.S.C. § 994. That statute provides:

> The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.

28 U.S.C. § 994(f).

Consistent with this statute, the applicable policy statement can be found at Section 1B1.13 of the United States Sentencing Guidelines. That statement provides:

> Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that--
>
> (1)(A) Extraordinary and compelling reasons warrant the reduction…
>
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. 3142(g); and
>
> (3) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
>  (4) The reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13 (2019).

In the commentary, the Commission goes on to explain what constitutes "extraordinary and compelling reasons" to support a reduction in sentence.  Specifically,

Application Note 1 provides that extraordinary and compelling reasons exist if the defendant is suffering from a serious physical or medical condition…that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt.n.1.

While some courts have held, as argued by the government, that the Sentencing Commission's policy statement on compassionate release remains controlling in the wake of the First Step Act, this Court agrees with the position taken by numerous courts that the "old policy statement provides helpful guidance, [but]…does not constrain [a court's] independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3852(c)(1)(A)." *United States v. Cosgrove, Id.; United States v. Rodriguez*, 2020 WL 1627331, (E.D. Penn. Apr. 1, 2020; *United States v. Almontes,* 2020 WL 1812713 (D. Conn. Apr. 9, 2020); *United States v. Haynes,* No. 93 CR1043 (RJD), 2020 WL 1941478 (E.D. N.Y. Apr. 22, 2020); and *United States v. Maumau,* No. 2:08-cr-00758-TC-11, 2020 WL 806121 (D. Utah, Feb. 18, 2020).

The Court begins its analysis of Mr. Dennis' motion addressing the conditions at FCI Sheridan. Mr. Dennis argues that while the Bureau of Prisons (BOP) has reported few confirmed cases of coronavirus-19 (COVID-19) at FCI Sheridan, because the BOP conducts limited testing and selectively reports results, other courts and this Court should not rely on the reported numbers. Mr. Dennis asserts the efforts by the BOP to contain the virus have been unsuccessful and insufficient given the continued spread of COVID-19 in its facilities, and that the Court should be skeptical of the BOP's policies and plans to mitigate the risk to inmates. Dkt. 1370.

Before the Court analyzes Mr. Dennis' health-related concerns, the issue of the conditions of his place of incarceration must be addressed. If Mr. Dennis serves the balance of his custodial time at FCI Sheridan, the current (September 24, 2020) conditions at that facility according to the BOP website https://www.bop.gov/coronavirus indicate:

| | |
|---|---|
| Inmates Positive: | 0 |
| Staff Positive: | 0 |
| Inmate Deaths: | 0 |
| Staff Deaths: | 0 |
| Inmates Recovered: | 5 |
| Staff Recovered: | 0 |

While any number of positives of the virus are of significant concern to this Court, it would appear the potential effects of COVID-19 at that facility would be minimal considering the current pandemic record at FCI Sheridan.

Mr. Dennis' motion is devoid of any showing that FCI Sheridan is unequipped to provide appropriate medical treatment if he were to become infected with the virus. Nor does Mr. Dennis assert any facts to demonstrate that he faces a greater risk while in custody than what he would face in the community upon his release.

The Court now turns to Mr. Dennis' mental and physical conditions.

To be eligible for this Court to exercise its discretion for a reduced sentence, Mr. Dennis bears the burden to show "extraordinary and compelling reasons" that meet the directives set by Congress and the Sentencing Commission for compassionate release to be granted. *See Riley v. United States,* C19-1522 JLR 2020 WL 1819838 at *7 (W.D. Wash. Apr. 10, 2020); *United States v. Greenhut,* No. 2:18-CR-00048, 2020 WL 509385, at *1 (C.D. Cal. Jan. 31, 2020. While Mr. Dennis has articulated health conditions, the facts of his current health do not warrant granting the relief he seeks for a variety of reasons.

Mr. Dennis' motion for compassionate release is based on his argument that his medical conditions, specifically his obesity, unresolved rectal bleeding, bloody stool, and knee problems place him at serious risk of complications or potentially death should he become infected with COVID-19. In addition to these medical conditions, Mr. Dennis

indicates he suffers from major depressive disorder and post-traumatic stress disorder (PTSD), mental conditions that he claims elevate his risk for complications should he contract COVID-19. Dkt. 1370.

Mr. Dennis argues his body mass index (BMI) places him at a level for increased risk of complications from COVID-19. Dkt. 1370. He indicates he has experienced rectal bleeding and blood in his stool since July 2019, which he claims is ongoing and thus appears unable to be adequately treated in custody. Dkt. 1373, Ex. J.

Mr. Dennis further indicates he requires a knee replacement and has not received proper medical care related to his knee issues. Dkt. 1373, Ex. K and K-1.

Mr. Dennis states he was initially diagnosed with major depressive disorder and PTSD in October of 2018, during his pretrial detention at Federal Detention Center Sea-Tac. At that time, he was prescribed Sertraline to treat his symptoms of anxiety and depression. Dkt. 1415, Ex. A. Mr. Dennis' diagnoses were confirmed through an independent forensic neuropsychological evaluation prepared at the time of sentencing in January of 2020. Dkt. 1250, Exhibit A.

Mr. Dennis argues his mental illnesses render him unable to cope with the measures being imposed to control the spread of the virus, including extended lockdowns. Mr. Dennis indicates his mental health has deteriorated as a result of the conditions of his confinement and that his fear that he, his children or his family will contract COVID-19 has exacerbated his symptoms of anxiety and depression. Mr. Dennis contends the BOP has failed to provide him with appropriate mental health treatment. Dkt. 1370.

Finally, Mr. Dennis posits that as an African American man, his risk is elevated even further given the finding of the Centers for Disease Control and Prevention (CDC) that hospitalization and death rates for African Americans are substantially higher than for other racial and ethnic groups. Dkt. 1370.

The government argues that Mr. Dennis has not presented an extraordinary and compelling reason for the Court to reduce his sentence. The government maintains that

while Mr. Dennis may be considered overweight due to his very recent weight gain while incarcerated, his BMI does not rise to the level that the CDC has identified as placing him at high risk of serious complications or illness should he contract the virus, and does not differentiate between weight from muscle and weight from fat.  The government states that Mr. Dennis' medical records provide evidence his medical conditions are overstated, and his treatment understated, and that his medical and mental health issues are being addressed and adequately treated in custody.  The government notes that while Mr. Dennis states the BOP has a protocol of placing COVID-19 positive inmates in solitary confinement for lengthy periods of time and equates that to torture, there is no indication Mr. Dennis has ever tested positive for the virus nor spent time in solitary confinement.  Dkt. 1400.

When the defendant was originally sentenced, the Presentence Investigation Report dated January 24, 2020 reflected Mr. Dennis' own opinion that while he referenced pain from his knee injury (for which he received treatment from Virginia Mason and University of Washington), stomach issues and blood in his stool, he was in otherwise good physical health and no complaints about obesity were raised.  PSR, p. 22. Even if this Court were to agree with Mr. Dennis' assertions of his current weight, he does not meet the criteria for being so obese for his age and limited identified health risks to warrant the relief he seeks.

Next, the Court turns to Mr. Dennis' complaints about his bloody stools.  This was a complaint raised by him at the time of his presentence investigation and during his incarceration.  As of the time of the filing of this motion the Court has no confirming evidence regarding the nature of this concern.  At best, Mr. Dennis had reported "rectal bleeding sometimes before stool passes" and that a diagnostic test had been done some years earlier.  The medical records indicate that the FDC medical staff had offered to perform an anal and rectal exam for a complete and thorough diagnosis, but Mr. Dennis "refused."  Dkt. 1462, Ex. 1, p. 5.   Such an exam would have eliminated speculation as to the actual cause of the bloody stool.  The Court can do no more than speculate as to the

precise medical nature of his complaints or whether the bloody stool is the result of a condition that is identified by the CDC as elevating the risk of serious complications from COVID-19. The Court relies upon medical evidence not speculation or conjecture in determining if the expressed concern rises to the level to warrant compassionate release.

As to Mr. Dennis' claims concerning his knee, the Court agrees with the government's review of the medical records for several reasons. First, there is no record that a physician or surgeon has recommended that he needs a knee replacement. At best, he has been diagnosed with moderately advanced left knee arthritis. The BOP has not ignored Mr. Dennis' expressed concerns about his knee injury or the pain that he suffers. The government accurately outlines the detail of what the medical records provide regarding the treatment for his complaints. Dkt. 1400, p. 8. This treatment has included medical precautions about managing his knee, x-rays, medical consults outside of the BOP, cortisone injections, and prescribed pain killers. The Court is not satisfied that the treatment rendered by BOP has been so inadequate to warrant compassionate release relief. Moreover, Mr. Dennis has not presented any evidence that knee pain, injury, or arthritis contributes in any way to an increased risk of complications from COVID-19.

Last is the issue of Mr. Dennis' mental health. His mental health history is documented in the PSR. More important is the neuropsychological report of Dr. Alan Breen. This report confirms that Mr. Dennis suffers from PTSD, depressive disorder, and marijuana and cocaine disorder. Dr. Breen's report indicates that Mr. Dennis needs comprehensive mental health treatment with medication, as well as substance abuse treatment.

Again, the best evidence for analysis of the treatment of Mr. Dennis' claims are found in his medical records, particularly those from the BOP. These records are illuminating.

The October 31, 2018 report of Dr. Grant Haven confirms a diagnosis of major depressive disorder and PTSD.  Mr. Dennis was prescribed Sertraline to treat his condition.  Dkt. 1402, Ex. 1, p. 21.

The February 13, 2019 BOP follow-up report indicates Mr. Dennis has benefited from the Sertraline medication and he has stopped worrying and is calm, mellow, and not on alert.  He no longer has anxiety attacks, evidencing the medication is addressing these concerns. Dkt. 1402, Ex.1, p. 29.

The July 10, 2019 BOP follow-report indicates the Sertraline continues to mellow Mr. Dennis out, and he is sleeping more soundly with no side effects, and anxiety is not nearly as bad.  Dkt. 1402, Ex. 1, p. 30.

The January 8, 2020 BOP follow-report indicates the Sertraline has controlled his PTSD symptoms and is preventing a return of depression.  It was further noted that no serious signs of depression were present, and it was reported that the Sertraline stops him from thinking depressive thoughts.  Moreover, no side effects from the medication were noted.  Dkt. 1402, Ex. 1, p. 3.

And last, the April 9, 2020, follow-up report reflects Mr. Dennis was prescribed continued use of Sertraline with no additional indications of mental health concerns expressed or recorded.  The record notes that Mr. Dennis indicated that the medication worked well for him.  Dkt. 1402, Ex.1, p. 43

Mr. Dennis' compassionate release motion is replete with an abundance of reports and generalized statements about mental health, but these references do not contradict the obvious and admitted benefits he has received from the mental health medication and treatment received to date.  The Court notes that Mr. Dennis' references to his medical records are devoid of the detailed analysis of the actual treatment provided by the medical providers at the BOP.  There is no convincing evidence that these treatment modalities will not continue to benefit him when taken as prescribed and with follow-up visits by mental health treatment providers.

Based upon the record before this Court, Mr. Dennis has not met his burden of demonstrating an extraordinary and compelling reason to show that he has a medical or mental health justification to warrant compassionate release.

### D. Safety of Others

The Court next turns to whether Mr. Dennis presents a danger to the safety of any other person or to the community. *See* U.S.S.G. §1B1.13(2). Because this Court has concluded that Mr. Dennis has failed to present to this Court's satisfaction that extraordinary and compelling reasons warrant his release, there is no need for this Court to address whether he meets the Title 18 U.S.C. §3142(g) factors regarding his danger to the safety of any other person or to the community.

### E. Other 18 U.S.C. § 3553(a) Factors

In determining whether to grant Mr. Dennis' compassionate release under 18 U.S.C. § 3582(c)(1)(A), the Court also considers the relevant factors other than noted above as set forth under 18 U.S.C. § 3553(a). These factors include the need for the sentence imposed, the kinds of sentences available, promoting respect for the law, providing just punishment for the offense, avoiding unwarranted sentencing disparities, and providing medical care in the most efficient manner. 18 U.S.C. § 3553(a)(2)(B, C, D); 18 U.S.C. § 3582(c)(1)(A).

Since Mr. Dennis has not met the basic requirement of presenting adequate justification for compassionate release, the Court need not address these factors.

///
///
///
///
///
///
///

### III. CONCLUSION

For the foregoing reasons, Defendant Carlos Demark Dennis' motion for compassionate release is **DENIED**.

DATED this 24th day of September, 2020.

*Richard A. Jones*

The Honorable Richard A. Jones
United States District Judge